24-32-86 USA v. Jason Bricker 24-32-89 USA v. Allison McHenry 24-51-82 USA v. Louise Orweck v. United States of America 75 minutes until argument time. Please roll from the bench. Arguing first for Defendant Appellee Jason Bricker, Mr. O'Neill. Thank you. May it please the Court, my name is David O'Neill and I represent Jason Bricker. I understand the Court has reserved three minutes of time for rebuttal. This Court should affirm the District Court's order finding that extraordinary and compelling reasons warrant a reduction of Mr. Bricker's sentence under Section 1B1.13b6 of the Sentencing Guidelines. The government's appeal of that ruling lacks merit for four reasons. First, the District Court correctly concluded that the Commission's policy statement is valid and binding. Congress explicitly instructed the Commission to give content to Section 3582c1 and the Commission faithfully discharged that duty in a way that is not manifestly contrary to the statute. By statute, the policy statement therefore controls. Second, the Court's decision in McCall did not purport to resolve the meaning of extraordinary and compelling for all time. As a panel of this Court in this very case has already noted, McCall went out of its way to make clear that it was not saying that the Commission was precluded from reaching a different decision. Third, Mr. Bricker has met the narrow set of circumstances that qualify him for a sentencing reduction under B6 and the District Court did not abuse its discretion in concluding that the sentencing factors in Section 3553a justified relief. Finally, the government fails in its attempts to second-guess the District Court's analysis of Mr. Bricker's individual circumstances. The government has waived its argument that Mr. Bricker cannot rely on B6 because he does not rely on a qualifying change in law. The government affirmatively told the District Court in response to a specific request for supplemental briefing that Mr. Bricker's sentencing disparity was due to a change in quote, Sixth Circuit precedent. The same is true of the government's argument that the District Court erred in finding that there was a gross disparity in Mr. Bricker's sentence. It was the government that gave the District Court the guidelines range that would apply were Mr. Bricker to be sentenced today. And the government's Section 3553a argument cannot overcome the substantial discretion afforded to District Courts evaluating these factors on a Section 3582c1a motion. I welcome the Court's questions. Yeah, I mean, in my mind this case comes down to point two you raised, so maybe I'd go to that one. We have an en banc decision that you're telling us this panel can, you know, potentially disregard. So I think it's important to understand what McCaul did and what McCaul did not do. McCaul was writing on a clean slate. This Court was writing on a clean slate McCaul, the entity that Congress had explicitly delegated authority to interpret a statutory provision, an ambiguous statutory provision. Oh, that's a million-dollar question. Well. Because it wasn't a clean slate, but they're looking at the same statutory language. We looked at the same statutory language, right? So we were doing the same things. And the terms extraordinary and compelling are exactly the kinds of capacious terms that I think is very difficult to say are unambiguous. Is that what the en banc Court said? The en banc Court resorted to exactly the kinds of statutory tools and analysis that one would turn to in reviewing text that is not self-defining. It looked at the purposes of federal sentencing. It had a lot of tools in the toolkit, but it looked at the text first. It looked at the text first. It also very pointedly dropped a footnote to say that it was not resolving the question whether the commission could reach a different decision. And it cited in that connection BRANDEX, which stands for the proposition that if a court is definitively resolving unambiguous text and thereby foreclosing. Those are all cases that say if there's ambiguity in the text, we may have to defer to a later agency interpretation. But that sort of begs the question whether what we were doing was saying it was ambiguous or saying it's unambiguous and here's all the reasons why. And I think it would have been strange for this court in McCall to have specifically dropped that footnote recognizing the possibility that the commission could disagree, had it regarded the statute as unambiguous and self-executing. There's also a fundamental inconsistency in the government's position in this case and on this entire issue. When the government obtained favorable rulings before the amendment, it sought to avoid Supreme Court review by telling the court the commission should decide this question. They're the entity with the expertise. You, Supreme Court, may not need to get involved at all. And then when the commission reached a decision that the government didn't like, it now says actually McCall and other cases definitively resolve. In the Ambach argument, I think someone reminded me, during the argument one of our colleagues asked the government this question, whether the government was saying that if we decided that basically essentially boxes out the commission and the government said yes. The solicitor general, the lawyer from the solicitor general's office. I understand the government says that. That statement is very difficult to square with the government's arguments in opposition to certiorari where it said that the court should allow the sentencing commission to resolve it. Unless the government simply wanted the commission to ratify the decisions of the favorable circuits, then the commission really would have had nothing to do. And that would have been a waste, a tremendous waste of resources by the commission. I think it's better read as recognizing the authority. There's other circuits. There's other circuits. And the Supreme Court could take, probably will at some point, I assume take these cases and resolve the issue. But, yeah, for me it just comes down, I don't want to take all the time, but if you read this decision as taking unambiguous language and resolving it in the way we've resolved it, then that would essentially decide the case, I think. If this court were to conclude that the terms extraordinary and compelling in these circumstances, that McCall decided there was only one reasonable reading of those terms in this context, then, yes, I can see that. I don't believe that's what McCall did, and I think that McCall, by its own terms, makes clear that that is not what the court intended to do. Nonretroactive changes happen all the time. That's a pretty common place in federal legislation. Yes, but nonretroactive changes that would be considered extraordinary and compelling and sufficient to warrant a reduction sentence are not common. And I think the history here is very important to understand what the commission did and how modest and nuanced the change was that it made. Before the amendment, there were, of course, courts going in both directions. There were courts like this one that said you can't take into account retroactive changes, and there were courts saying you can always take into account retroactive changes. The commission didn't adopt either of those positions. It considered the position that you can always take into account retroactive changes. The government objected, and the commission listened to those objections, and what it did was, as the Fifth Circuit described it in John, it charted a reasonable middle ground between those two. So it required a number of elements in addition to a gross disparity in the sentence, including that the defendant had served 10 years of his sentence. And I would just note that the defendant, McCall, itself would not have been eligible because at the time that he sought sentencing reduction, he had served five years of his sentence. And I think that highlights the modest change that the commission made in response to the circuit split. So the commission did not take the most drastic or most categorical position, and I think to a large extent the government's arguments continue to fight that straw man. I think that's the question before us, is the distinction in the presentation of the issues between the time that McCall was decided and there was no policy. I would ask you to explain why you think the decision of the Sentencing Commission after 20-some years, how does that change how the analysis goes forward? And is it based on the express delegation to the commission to be able to read the policies and express them? So that's exactly right, Judge Stranch. This is a case involving an express delegation. Both sides agree with that, that it's an express delegation. Under cases like Batterton, which the Supreme Court cited in Loper Bright approvingly, we have an express delegation. The standard is whether the reading that the agency charged with that delegation reached, whether that is manifestly contrary to the statute, whether it's within the broad bounds of reason. So even if this court, writing on a clean slate, looked at these words and said, we think the best reading is that these types of changes are not extraordinary and compelling. That does not mean that a contrary interpretation would be unreasonable. Indeed, seven judges of this court thought the opposite reading, writing on a clean slate, was the correct one, as have dozens of other federal judges. So to say that the decision the commission reached was obviously wrong or manifestly contrary to the statute is just not tenable. Thank you. Mr. McHenry has your rebuttal. Good morning, and may it please the Court. Christian Grostek on behalf of Ellis McHenry, and I will plan to take advantage of the time that the Court has reserved for rebuttal. First of all, just to focus on Mr. McHenry at the outset, although I know that the questions presented before the Court generally apply to everyone. Mr. McHenry was 23 at the time of his offenses. He received a sentence totaling over 50 years in prison. His guidelines range today would be less than 28 years, and he's already served more than that time. Over his over 30 years in prison, he's had clear conduct, participated in dozens of rehabilitative programs. He has a detailed release plan for deportation to Jamaica, and the district court in his case found both that he qualified under the policy statement under subsection B6 and that the section 3553A factors would support relief, but obviously found that the court was precluded by primarily McCall from granting relief, which is why we're here today. Endeavoring not to repeat what my colleague argued. But give us your position on how this is to be interpreted, because we know there are questions about how McCall was addressing that, and then you have the new policy that is passed. Do you agree with your colleague that the only thing to look at is the text of the statute and compare that to the policy itself? And if the policy is not manifestly contrary to the statutory language, then it is the policy that governs. The short answer is yes, Your Honor. The longer answer, I would actually start with points I think we all agree on, which is that, one, this is an express delegation. Two, that because it's an express delegation, the court's job is to police the outer boundaries of what that delegation authorizes the sentencing commission to do. And so, again, I'm trying not to repeat, but rather than writing on a clean slate, now the question before the court is, well, what are the outer boundaries? It's a question that simply wasn't presented in McCall, and, of course, was reserved in footnote three. I thought we just started with the point that this is about the text. And in McCall, we looked at the text, and we said here's what it means, and we said that these nonretroactive changes clearly do not fall into the category of cases that can be reconsidered. And we gave a lot of reasons why text, but we interpreted it to use other tools. Pretty much every argument that's made in the briefs are points we've already covered in that opinion. I appreciate there's been developments after the fact, but I don't know what more McCall could have done to say this is how we understand the text. My response, obviously, it's a strange position on this side of the lectern in a case like this, where judges that signed on to McCall were asking you to take an interpretation of that that you may find different. But from my reading of McCall, which is all I can base that on, the point of footnote three was to say we are not deciding what the outer boundaries are here. We're deciding what we think the text means on a clean slate, which, of course, was the task before the court. It's what needed to happen at that point. Other courts disagreeing at the same time was what created the circuit split that then the Sentencing Commission stepped in to resolve. And I would actually go back to Batterington as a comparison, because they're the Supreme Court reviewing an express delegation and setting in motion the whole line of cases that we're relying on today, said, yes, the agency was entitled to define employment this way, in part because that was a definition that some states had already adopted. And so here the Sentencing Commission stepped in and said, we are going to adopt actually a narrower interpretation, but an interpretation that many courts have already adopted. And so, again, our position is that that's good evidence that this is within the outer bounds of what the commission was authorized to do. Specifically, then, we're asking this court to defer both to the Sentencing Commission's policy statement but to Congress's delegation to the Sentencing Commission of who was going to be the primary decider of the two things, right, the criteria by which extraordinary and compelling circumstances are determined and examples of that, which is what the commission did in its policy statement. And how did the commission's policy statement limit or show guardrails on its interpretation? I think that's a core question. And to go back to what Judge Raebler asked my colleague, every – this is a long-winded answer. I will get to it quickly. But every criteria in B-6 on its own is ordinary in the sense that people grow old, people can get sick, people can be victims of crime. All of those things happen every day. And there are non-retroactive changes of law passed by Congress. What the rest of B-6 says and what now this revised – what the rest of 1B1.13 says, I'm sorry, and what now B-6 says also is that in particular circumstances, those characteristics can become extraordinary and compelling. So here we have that combination of having served 10 years. And I think the key one, a gross disparity between the sentence the person is now serving and what they would likely serve today. And that allows district courts to exercise discretion here, to look back. Oftentimes the sentencing judge, though not always, as it wasn't in Mr. McHenry's case, and to determine, wait, would there be a different sentence here? That's not a given in a 924C stacking case like ours. The reason being, yes, we often treat the 924C sentence as a mandatory sentence, but it's actually a mandatory minimum sentence. And so a district court would be empowered and have – there are plenty of cases where it happens where a district court would say, I actually think a higher sentence would be warranted here than that mandatory minimum sentence. How broad do you understand the commission's power to be? So we have these – Congress has done something here. It hasn't done what the commission did. It said going forward we're changing the penalty. The commission says we're going to go backwards and change it. But suppose Congress hasn't done anything. There's just an existing penalty out there, mandatory minimum or something, and the commission thinks, oh, you know, we think this is pretty harsh under the circumstances and we're going to enact a change that allows, you know, these prisoner-invoked motions for release. We're going to instruct the district courts to consider under the compelling circumstances the fact that we think this statute is really harsh. The commission can do that too? Two brief responses. The first is, no, I don't think the commission could simply step in and say we disagree with every judgment that Congress has made about the appropriate sentence in the case. But my second point would be the rest of it. So the nonretroactive action by Congress means Congress is at least thinking about this, so it's kind of put the ball in the air and so we can jump in and grab it? Yes. In both cases the commission is doing something different than what Congress has done. Yes. In this scenario and the second scenario, Congress has indicated that our community judgment about what's an appropriate sentence for these exact offenses now is much lower, potentially at least, than it was 30 years ago. And that's what happened to Mr. McHenry. Thank you. Thank you, Judge Stranch. May it please the Court, Alex Treiger for Luis Orta. The Sentencing Commission's new policy statement controls this case because it is binding on courts. The policy statement is also valid because it is not manifestly contrary to the statute. On our first point, the policy statement controls here because Congress tasked the commission with making policy judgments. There's something else binding on us too, which is our en banc decision. So to get right to McCall, Judge Riedler, I'll give you a short answer and then I'll try and get through a longer answer. So the short answer, which is the one that my colleagues have made, which is that the policy statement was not before the court in McCall, and McCall reserved that question. But the longer answer is that the analysis here is fundamentally different. And Judge Stranch, I think, got right to it. The question here, because we have a policy statement, is whether the commission acted within its expressed delegation of authority in 994T. And that is a question of statutory interpretation, where the court's job is to look at the text of the Sentence Reform Act and see whether anything in the language of 3582 and 994T prohibits what the commission did in B6. And I'll turn to that in a minute, but I would submit that a serious textual analysis compels the conclusion that nothing in that language forecloses the commission's policy choices. And to your question about what McCall did, this Court is not shy about saying that statutory text is unambiguous when it is. McCall doesn't do that. If you look at the start of Section 4 of the analysis, there's statement rule for our decisions. If we don't say it's unambiguous, then it's understood to be unambiguous or it's ambiguous. If you just read that, I appreciate your point, but if you read it, it says full stop, for one, and it just goes through like every possible reading of the statute and says that these non-retroactive changes, which happen all the time, are not extraordinary and compelling. Well, I want to turn to that. That goes to the validity. But I want to focus your attention. The first thing that McCall said was that the text of the statute, extraordinary and compelling, did not illuminate the type of changes that could justify a sentence reduction. And that is consistent with the vigorous disagreement among and within the circuits, which I would submit is powerful evidence that the phrase we're dealing with here is not explicit. But turning to the policy statement's validity, the policy statement is valid because nothing in the statutory text of the Sentencing Reform Act prohibits the policy choice the commission made here. The government's only textual argument, which, Judge Rader, I think you're getting to, is that prospective changes in law are ordinary and therefore categorically can never be considered, even alongside a defendant's individual characteristics in conducting the extraordinary and compelling analysis. That improperly isolates a single factor in a multi-factor test and ignores that the whole is often greater than the sum of its parts. And this question arises frequently in the probable cause context, where the Supreme Court has repeatedly explained, most recently in Wesby, that a number of factors that in isolation do not amount to probable cause can combine synergistically to clear that bar. Compassionate release and B6 work the same way. And I'll grant you that this court in McCall said that courts shouldn't consider ordinary factors alongside other factors as part of that threshold analysis. But what's critical about that passage in McCall is that nothing in the statutory text compels that conclusion, and this court didn't identify a textual basis for that reasoning. And that left the commission free to disagree and to adopt the policy choice it made in B6, which reflects a totality of the circumstances approach. I think there are at least two textual bases for that conclusion. The first is that 994T states that rehabilitation alone is not extraordinary and compelling. That demonstrates that Congress contemplated a multi-factor analysis where even a single factor that by itself was not extraordinary and compelling could be part of the analysis at the threshold step. I would also point you in 994T to the reference. It specifically directs the commission to identify criteria for identifying extraordinary and compelling circumstances. Again, the use of plural criteria demonstrates that we don't need here a single factor that is by itself extraordinary and compelling. Instead, we can consider multiple factors and conduct a holistic inquiry on a case-by-case basis. And it did so requesting a list of specific examples, right? That's correct, Judge Trench. So finally, I just want to make sure that I can address the government's argument about the First Step Act, which is that B6 conflicts with 401C, which is the provision that states that the new penalties to 841 apply to defendants not yet sentenced at the time of the statute's enactment. That argument rests purely on speculation about congressional intent. But this court doesn't psychoanalyze lawmakers. It looks, as Judge Trench was asking before, at the text of the statute. The only thing that goes through bicameralism and presentment and is signed by the president is the language of the First Step Act. And nothing in that text alters the extraordinary and compelling standard or says anything about how courts can consider the changes to 841 in adjudicating compassionate release motions. The government's argument would require this court to read a silent limit into 401C that courts can't consider the new penalties to 841 and the disparity that they create, such as in Mr. Orda's case, in analyzing whether there are extraordinary and compelling circumstances. The Supreme Court has emphatically rejected that argument in Kimbrough, in Dean, in Rodriguez, in Concepcion, each time explaining that Congress directs sentencing practices in expressed terms and therefore courts cannot read silent limits into sentencing statutes. This court should reject the government's argument based on the First Step Act for the same reason. You should have your time to address your client's specific factual issues if you would like. And we will give Mr. O'Neill that opportunity because we ask so many questions. You did not get to address your client's particular circumstances. Do you have anything further you would like to say about your client's particular circumstances? Well, I'll take the opportunity, Judge Franch, to say this, which is that Mr. Orda is not solely relying on a change in law, which here is unquestionably a gross disparity between the mandatory minimum life sentence he's facing and the 10-year mandatory minimum he would face today. He also has raised his health, his extraordinary rehabilitation, his 25 years of infraction-free sentence, as well as health conditions. And again, that just confirms the totality of the circumstances approach that the statute calls for and that the Commission adopted in B6. So if we remanded on your client, it would need to be a full remand for consideration of your client's eligibility for resentencing, both under the 3553 factors and the Sentencing Commission's policy? That's correct, Judge Franch. The district court in this case didn't do the 3553A balancing. It rejected Mr. Orda's motion at the threshold stage on the erroneous conclusion that McCall was binding and foreclosed his B6 arguments. And so we would ask this court to reverse and remand for the district court to apply the proper standard to analyze Mr. Orda's motion under B6 and then turn to the discretionary factors. And if I can just briefly make one point on that, I think taking a step back, what's important to remember is that this is a discretionary system. And so the district court is analyzing these cases based on the defendant's particular circumstances on a case-by-case basis. And if the district court in Mr. Orda's case examines the gross disparity between his life sentence and his 10-year mandatory minimum alongside his other individual circumstances and concludes that that's not extraordinary and compelling, it can deny his motion on that basis. And so all the Commission was doing in B6 is returning discretion to district courts that circuits around the country had prevented by allowing courts to consider a change in law alongside other factors in analyzing these compassionate release motions. Thank you. And I would like to... We ask you so many questions, Mr. O'Neill. I think you need an opportunity to speak to Mr. Bricker's... That was my fault. We did it. Not at all. I was happy to answer the questions. You know, the one way in which our appeal differs from the other two is that we are the appellee, and so the district court granted Mr. Bricker a reduction. So my main argument on that is that his individual circumstances were extensively vetted in the district court. Judge Poulster heard them, and we would ask this court to recognize that his decision was not an abuse of discretion under the very forgiving standard. Mr. Bricker has served all but, I think now, 16 months of a very lengthy sentence. He has been released. He is in state custody, but he, in any event, would be released in April of 2026. And the motions panel of this court, in this case, denied the government's effort to remand him while this was pending, recognizing that, because of his individual circumstances, his record in prison, and the totality of the circumstances, that the government did not have a substantial interest in his remand. And do you take the position that the government waived part of this argument based on your statements earlier that it's Sixth Circuit precedent? That was their statement. Is it waiver or is it invited error? What is your position? We believe it's waiver. The district court asked a specific question and asked for a supplemental briefing. What would Mr. Bricker's sentencing guidelines be if he were sentenced today? The government, in a dedicated one-page response, said two things. It said his sentence would be 70 to 87 months, which is accurate for the robbery counts, and it said the reason is Sixth Circuit precedent. So it would be deeply unfair to Judge Polster, who relied on those statements, for the government now to come and say, actually, he's ineligible for other reasons that we chose not to present to you, and, by the way, we miscalculated his guidelines range. In any event, there is no reason to think that Judge Polster would reach a different decision based on a 10-year disparity, which obviously is very significant than the 16-year disparity that he cited. Thank you. Thank you, Your Honor. May it please the Court. Andrew Ngo, on behalf of the United States. In Section 3582C1A, Congress limited the Sentencing Commission's authority to identify qualifying reasons for a sentence reduction by the clear directive that any such reasons must be both extraordinary and compelling. And in the Court's en banc decision in McCall, this Court explained that in the sentencing context, nonretroactive changes in law are neither. To the contrary, it's the ordinary practice to apply sentencing changes prospectively to defendants who have not already been sentenced. And that's particularly the case where, as here, both Congress and the Sentencing Commission has expressly declined to make retroactive the very changes in law each of the defendants rely upon for a basis for a sentence reduction. So in our view, subsection B6 clearly conflicts with the statute and, for that reason, exceeds the Commission's statutory authority, whether under this Court's authoritative construction of the statute in McCall or as a matter of first principles. And let me just start with McCall, because, Judge Raylor, I think, as you clearly understand, we think that this Court fully resolved that question of the statute's meaning, and particularly the meaning of the phrase extraordinary and compelling, as a matter of plain text under Section 3582C1A. And having done... I'm struggling with that because, in fact, I'm seeing that the analysis began with the statute and then immediately turned to defining it through history and structure and the other things that you would look to if you, in fact, believed that the statute was ambiguous. So we don't think that's right, Your Honor. The Court started, in fact, with the text and said extraordinary and compelling both have an ordinary meaning in this context. And we think that's correct. In the sentencing context, the ordinary meaning of extraordinary and compelling does not encompass the ordinary circumstance of changes in law. Now, the Court reinforced that conclusion by looking at structure and history, and those, particularly structure and context, are certainly normal tools of statutory construction that the Supreme Court has indicated courts run through to determine the clear meaning of a statute. And I think... Wasn't its holding at the end contingent upon the text of the statute as defined by its history and its structure and all of the things that would be looked to if the statute were ambiguous? So I don't think so, Your Honor. Let me point you specifically to page 1065 of this Court's opinion, which I think is quite clear on this. In response to Mr. McCall's arguments that other circuits, I think at the time it was the 4th, 10th, and... I forget which had decided by that point. But in response to those circuits' arguments that the statute permitted a change in law to qualify, this Court then said, directly following that paragraph, we cannot reconcile that approach with the plain text of the statute. And then in its reason for amendment, the Sentencing Commission, and this is at 80 CFR, page 28258, the Commission said, we are adopting the position of those circuits. This Court clearly said that that position is foreclosed by the plain text of the statute. And so for that reason, I take this Court's decision in McCall to have run through all the statutory tools of interpretation and said that changes in law is a, quote, legally impermissible ground under the statute, either alone or in combination, for a sentence reduction. Don't you think the argument that because there is a circuit split on that very question, that that is itself evidence of ambiguity in the statute? Absolutely not, Your Honor, and I would point you to... Why not? The Supreme Court in Levante, Neal, and Coonsville, United States, in each of those cases, resolved decisions and determinations of the Sentencing Commission that took a conflicting view, and in Coonsville, United States in particular, there was a circuit split that arose. And the Court said the statute in each of those cases clearly meant one thing. Of course, the existence of a circuit split means courts have come to different conclusions about the statutory text, but we don't think that in and of itself is any indication of ambiguity. And again, I would say we have the text of the statute, but more importantly, and I think this Court's decision in McCall ran through several of these other structural considerations that we think reinforce and confirm the textual exclusion of non-retroactive changes in law. And again, we think because of the statutory language, changes in law don't have the capacity in this context to be extraordinary or compelling because it's just categorically something Congress did not intend for the Commission to be able to qualify as a reason for a sentence reduction. The first one is 3582C2, the very next subsection of the statute, in which Congress expressly gave the Sentencing Commission authority to permit some changes in law, and specifically the Sentencing Commission's own determinations of whether to make a sentencing guideline change retroactive. Congress gave the Commission the authority to qualify that as a reason for a sentence reduction. In our view, that means two things in the context of the statute. The first is that Congress clearly knew how to specify when it thought changes in law were a reason to allow the Sentencing Commission to authorize courts to go back and reduce a defendant's sentence. And second, the fact that Congress had to spell that out in C2 specifically suggests Congress did not think C1a already gave the Commission the authority to authorize changes in law to qualify for a reduction, or else C2 would have been superfluous. Is that the issue as to whether the claim is that it's making all non-retroactive changes enforceable? Or is that reasoning that would not stand in the way of allowing, based on the Sentencing Commission's policy, in the extraordinary circumstances, the consideration of non-retroactivity as one of the many factors that a court is to look to to determine whether an individual should actually have some relief? So I don't think it makes any indication that as a general matter, statutes at Congress or legal changes that courts impose are something that C2 suggested a court, the Commission could allow a court to look at. C2 was specific to decisions of the Sentencing Commission themselves and the Sentencing Commission's own determination of whether to afford relief retroactively when the Commission itself reduces sentences. Now, I don't think the Commission was given any authority to permit a case-by-case exception to the statutory penalties that Congress has expressly authorized for certain sentences. And to Judge Rayler's question to Mr. McHenry's counsel, I took Mr. McHenry's counsel to say the Commission would not have authority to allow a case-by-case change or exception to a mandatory minimum sentence in the general mind run of cases. I don't see why the First Step Act changes that in any way. In Section 401 and 403, Congress was expressed that it was making a categorical judgment about the reach of the retroactive changes of Sections 401 and 403. And we don't think there's anything about that change that allows the Commission to undo it on a case-by-case basis. And I would point this Court to Mistretta in particular, where the Supreme Court upheld under the separation of powers the Sentencing Commission in part because it does not exercise the authority or vested judicial branch with the legislative responsibility for establishing minimum and maximum penalties. And for that reason, we don't think the Commission allowed under the term extraordinary and compelling the Commission authority to, on a case-by-case basis, make exceptions to Congress's categorical judgment. I would also point, as another structural consideration, Your Honor, to Section 994A, which specifically says that the Sentencing Commission, in promulgating both policy statements and guidelines, must ensure that those promulgations are consistent with all pertinent provisions of any federal statute. And I don't see how you could give force to that provision and still say that the Commission is acting consistent with it in allowing a case-by-case individualized exceptions to a statutory penalty that Congress has made clear should not apply to these defendants. Or has made clear should not apply completely and totally retroactively, correct? So again, Your Honor, our position is that this is a legally impermissible ground, as the Court said on page 1066 of its opinion in McCall. In the sentencing context, even if you might think the disparities here are extraordinary on a colloquial sense, in the sentencing context, they don't have the capacity to be extraordinary or compelling because they're not unusual, just as a categorical matter. And our position is that the statute did not allow the Commission to permit case-by-case exceptions to, in particular here with the First Step Act, Congress's categorical judgments. I mean, I think our position is just the mirror image of the categorical judgments that Congress made in Sections 401 and 403 with respect to its decision to apply these new penalties prospectively only. And I would just point out that there are bills pending in Congress, the First Step Implementation Act, that has been proposed both in the prior Congress and the current one, that would make Section 401 and 403 retroactive in a much more nuanced basis along the lines of Section 404 of the First Step Act. Those haven't passed, and we don't think that Congress intended to allow this type of case-by-case rejudication of a defendant's sentence through this pre-existing compassionate release statute that has been around since 1984. And I would say that view is also just antithetical to the entire animating purpose of the Sentencing Reform Act, which was meant to reduce disparities and district court's discretion, while also preventing re-adjudication, consistent re-adjudication, of defendant's sentences. And I think the fact that compassionate release does not have any limits on the number of motions individuals can bring does not prevent a defendant from coming back to a district. But the policy statement has real guidelines as to what qualifies, right? So, Your Honor, we dispute the kind of rigidity of those guidelines. I think, as we point out on pages 37 to 38 of our brief, courts have come to just dramatically different conclusions about what constitutes an unusually long sentence or a gross disparity. And I would also point out that with respect to the First Step Act, every single defendant sentenced under Section 924C before Section 403 will have, by definition, served more than 10 years in prison. And given the departure that Congress made in the statutory minimum, I think there are quite a number of courts that would find every single defendant qualifies. And that is inconsistent with what, as the Senate report in 1984 said, was expected to be a safety valve for use in a relatively limited number of cases. And so we just don't think that Congress meant to, as I think this Court said in Jarvis, unscramble the approach of Section 401 and 403 by resort to this safety valve that was truly meant for intervening circumstances that are specific to the offender and not meant to... We struggle with that because it is a limited group of people who will qualify. It is a limited policy statement. And so the question becomes when there is an authorization for an express authorization for the Sentencing Commission to place the policy into the statute, they are to define in this situation Congress has already given the express authorization to the Sentencing Commission. So it's not a question of the Sentencing Commission is acting at odds with the legislature. They already have the right to make that policy statement. And it is at that point that the legislative decision to grant that to them is what they employ in deciding what these extraordinary circumstances should be and other legislation is unnecessary because they are now the authorized party to interpret. Doesn't that change your argument that, well, that's not what Congress is doing or that's not like this act that the Congress passed? No, it's not because the Sentencing Commission has been authorized to the power to do something different. So let me give you two responses to that, Your Honor. And I respect that the first one may be unsatisfying to you as a dissenter in McCall, but I think Loper Bright made clear that this court has the authority and power to interpret the boundaries of that delegation and police those boundaries. And we do not view the delegation because of the express inclusion of extraordinary and compelling in the statute, which makes clear that it's not just rehabilitation alone that's the only limit Congress placed, that that is an independent statutory restriction on the delegation. And that, as this court explained in McCall, the words extraordinary and compelling have a determinant meaning in the section that as a categorical matter boxes out changes in sentencing law. In addition... But how did McCall come to that? You and I may disagree on how McCall came to that point. Instead of saying, here's the statutory wording, full stop. Well, it did use the words full stop, Your Honor. It did, but after it had said, here is how we support that determination. And that seems to me to be moving into the world of ambiguity and using other support constructs to explain why the holding was in McCall. So, again, let me give you two responses to that, Your Honor. Okay. I would again point to page 1063 of McCall, where the court said it is the text of the Compassionate Relief Statute itself that supports the categorical exclusion of nonretroactive legislation or decisions. I think that is a clear indication of the meaning, the clear meaning of the statute. And, again, I think that depends on both text, but context and purpose, which we don't believe are methods of statutory interpretation that courts only rely on in ambiguity. I mean, text and context can be resorted to resolve the meaning of a statute, not in a vacuum, but in its full context. And so we believe McCall expressly resolved the clear meaning of the statute. Now, even if you disagree with that, as we make clear, the next question would be, even if the statute is ambiguous, whether the commission came to a reasonable reading of the statute. So even if you thought there was a threshold ambiguity problem, which we do not believe, I'll also point you to page 1064, where the court said in light of the legislative history, there's, quote, no ambiguity for this court to resolve, so did not need to look to the legislative history at all. But if you thought there was an ambiguity, our position still is under Mayo Foundation and under the general kind of second step of a delegation, that the commission came to an unreasonable reading of the statute for all the same reasons the court in McCall gave resort to structure and history. Even if you thought those... Didn't Loper Bright say in cases of express delegation, the plain text of the statute is best read by deferring directly to an agency rather than engaging in its own interpretation? The court then said a court has the authority to police and to find the bounds of that delegation. And is what it's being considered in that context what the policy specifically says, which is you have to have served so many years, there has to be such a disparity, all of the guardrails. Isn't that what a court would look to, whether those guardrails are within the authorization of the agency as it tells us what that statute means? So sure, Your Honor, but our threshold position is that as a categorical matter, a change in law, which is the kind of threshold gateway into B6, does not have the capacity in this context to be extraordinary and compelling. And I would just say the unusual length of the statute, of the disparity, whether the disparity is a gross disparity, those are all things that are derivative of the very change in law itself. They're not independent circumstances that are wholly outside the change in law. And so I don't think the commission could bootstrap those as different circumstances that might distinguish among offenders. But a very minor point here that's been bugging me since I've been working on this is since the first of the three B6 requirements, and I think those are in the conjunctive. I don't think that they're in the disjunctive. So the first one is that it's an unusually long sentence. And I've been trying to figure out how a properly calculated guideline sentence is unusually long. Unusual as compared to what? So we think that's right, Your Honor, particularly with respect to the guideline sentence that would still be the guideline sentence today. I mean, we take the position both that those are not unusually long or grossly disparate. But you're not alone in kind of being at sea with respect to what unusually long sentences mean. As we point out in our brief, the Howard. There would sure be one where the court said, I don't care what the guidelines require. This guy is really, really bad, and I'm going to sentence him to three or four life terms just so he's, you know. That would be unusually long. But if the guidelines say, here's his offense level. Here's his criminal history category. Here's what the recommended guideline is for somebody in that situation. And the court says, and that's what I'm going to impose. Seems a little hard to say that's unusual. I think that's right, Your Honor. But again, district courts are at sea, as we kind of point out in our brief. And I think that's another reason why this whole exercise is inconsistent with the entire animating purpose of the Sentencing Reform Act. I guess I would like to just in the last few minutes. Can I ask you one question? Yes. So, you know, we all appreciate the challenge. Your friends on the other side have made great arguments. You know, fortunately, I've joined an opinion that's rejected some of them. And so have eight of my colleagues. So there's some tension there in Judge Stranch. And, you know, Judge Batchelder isn't weighed in. So, you know, we're not all known quantities, I guess. But there is this footnote three, which I think your friends on our side point to. You know, that might raise some questions as to what exactly we were doing in McCall. So what is your take on that footnote? So my take on footnote three, Your Honor, is this court clearly reserved the question of passing on any hypothetical policy statement. I think that's appropriate. No policy statement had even been proposed, much less promulgated. But the fact that the court reserves on an issue does not mean that its analysis or its kind of discussion is not dispositive when that issue returns to this court. And I would just point to both Brand X and Home Concrete and Supply, which this court cited in that footnote as both cases that hold where the statute is clear and unambiguous. The agency has no gap left to fill. And we just think that the entire thrust of the court's opinion in McCall, which at every turn is replete with reference to the statute's plain text and clear meaning, resolves this, even though the court had no opportunity to pass on any hypothetical policy statement at the time. It was not before it. And again, we, as you pointed out, made clear in our oral argument to this case, and we in fact did say in every cert op for the Supreme Court, that our substantive position is that changes in law cannot qualify as a categorical matter under the statutory terms extraordinary and compelling. We reiterated that to the commission both in our written statement and in our live testimony. And our view with the Supreme Court, we said they should stay their hand because their review might be unnecessary if the commission came back with a reading that we think reflects the actual power the commission has. I see my time is up. I'm happy to respond to specific questions about Mr. Bricker's case because we do have alternative arguments in that case that even if you find B-6 is valid, the district court should be reversed for its grant of a reduction in his case. I'm happy to respond to specific questions if the court will indulge me. Please do. What is your position? There's a question of invited error or a question of waiver. What is your position? Sure. So we have three reasons why we think that Mr. Bricker does not qualify even if B-6 applies. The first is with respect to the categorical carve-out for changes in law that result from the sentencing commission's decision not to make guidelines change retroactive. And in response to the court's specific question about whether Mr. Bricker would be a career offender today and what his sentencing guidelines range would be, we accurately explained that he, because of intervening case law, he would not be today a career offender. Of course, we are on plain error. We admit that we didn't go forward and say that's because of the fact that the commission, as a matter of policy, deleted the residual clause. But we did not concede that the change in law results from the elements clause discussion that this court had a number of cases that made clear he wouldn't apply today. So it's plain error. It's not waiver. We said nothing that intentionally relinquished the argument that he qualified under B-6 at all. We were, in fact, quite... Is it invited error? I don't think so, Your Honor, because we responded to the court's specific question about his status today. The court didn't ask us anything about what did the status result from, what change in law resulted from the status. So we don't think it's invited error. Now, even if you thought it was, the next question becomes whether there's a gross disparity. And as we point out, the district court clearly miscalculated the gross disparity by at least six or seven years. Well, he thought 16 and it's 10, or have I got it back? It thought it was 16. It's actually, even under the district court's math, would have been 17 and some change. But it's actually 10 years and three months. And that is a relevant distinction the district court didn't have an opportunity to consider, and we think at a minimum would require remand for reconsideration of the appropriate disparity. We didn't waive that argument either. Of course, the court asked us what the sentencing guideline range would be today, and we said with respect to the actual sentences for which the guidelines applied, counts one and two, there was the range. But both Mr. Bricker's submission and our submission made clear that the 84-month 924C offense sentence would still apply, and I just point you to page 937 of the record in which Mr. Bricker himself said that, that additional sentence wouldn't change. So we didn't waive the argument. We responded specifically to the court's specific and tailored question about the guidelines range. And then last, I would just say with the Section 3553A factors, we recognize the court's broad discretion there, and it's perhaps unusual that we're making this argument here. I think what distinguishes this case is the fact that three years ago, the same district court judge looking at the same 3553A factors found a different extraordinary compelling reason for a reduction, Mr. Bricker's obesity at the time and his risk for COVID, and said that notwithstanding that and looking at all the 3553A factors, including specifically the fact that he would not qualify as a career offender today, the full sentence is still appropriate. And we just don't think the court did anything in its order here to justify a departure from that prior decision, looking at the exact same 3553A factors, such that it abused its discretion in coming to a diametrically opposed conclusion. I'll ask you one last question just to help us look more broadly across the field. Is it correct that there's no circuit that is yet to address still to this point whether the commission's determination here is valid? That's correct, Your Honor. Let me just tell you. Yeah, I'd love to hear it. The Third Circuit had a case that was argued, I think, back in June, in which it was a pre-amendment case. So the district court rendered its ruling prior to the amendment. The court then asked for briefing on this issue. And we told the court we don't think it was properly presented in that case. The court nevertheless held argument and may well resolve the case. It has a follow-on case that's held for that prior decision. The name of the case escapes me. But there's at least been argument there. The Fifth Circuit in Jeanne recently held that the, again, a pre-sentencing, pre-amendment case, purported to hold that the statute permits consideration of changes in law. The day after that issue, that was decided, the court sua sponte stayed the mandate, and the government has moved for en banc review that is fully briefed as of Monday but still pending with respect to that. The court said that its analysis would support the subsection B6, but of course, as the dissent pointed out, that was dicta in that case and it wasn't before the court. The issue is also fully briefed in the Eighth Circuit, which has unscheduled argument, and the Seventh Circuit, where there's an argument next Friday. So it is percolating. Those are post-commissioned action? Post-commissioned action in both the Eighth and the Seventh Circuits also have pre-commissioned action decisions that in our view find as a matter of plain text that changes in law don't qualify, so they'll be presented with what we think is the same question before this court. You know, that's the state of play, I guess, right now in the circuits. Yes, thank you. Thank you, Your Honor. I appreciate your indulgence. We'll each have your rebuttal time. Mr. Neal. Thank you. I just want to make a few very quick points in rebuttal. I'm happy to respond to the case-specific arguments the government has made. I think from the government's own description, it's clear that invited error at best is the applicable standard. The Sixth Circuit rarely reviews invited error, and even if the court were to review it, the government could not establish substantial damage to its own interest for the exact same reason that the panel decision already ruled on that issue. Judge Riedler, I want to come back at you one more time on McCall, and I do so with trepidation in part because I know you've thought about this issue a lot.  And because I think that the way to look at McCall is that it is the nature of judicial decision-making that when you are confronted with statutory text, you justify the reading that you believe is right, and especially when you're confronting a dissent, you make the arguments that you believe are going to show why the dissent is wrong. That doesn't mean that you think that your reading is the only possible one. It means that you think that your reading is the right one. That, I think, is a fundamentally different question that this court would be confronting if McCall hadn't been decided. And the question was, as the question should be at this point, whether what the commission has done is within the broad bounds of reason and within the permissible limits of the statute. And in that context, you might look at all of the arguments from McCall and say, well, I think the right reading of the statute is that extraordinary circumstances shouldn't be considered, but I recognize that someone could come to a different conclusion as seven judges on this court did. And if you're looking at it that way, the conclusion you reach is that the commission acted within the scope of its delegated authority. So I wanted to make that point. I also did want to pick up on one suggestion that what the commission had done here is contrary to what Congress had done. Congress said these changes shouldn't be retroactive, and then the commission said, no, well, we think they should. I actually think that what the commission did is complementary to what Congress did. Congress said these are not going to result in wholesale resentencings for any defendant who qualifies under these laws. That's the categorical decision. Congress then came in, created a procedural mechanism under the First Step Act to allow defendants for the first time, and not just the DOP, to make these motions under the heading increasing the use of compassionate release, allowed the inmates to make these motions, and allowed courts in the discretion that district courts have traditionally exercised to decide whether in a particular case that change in law, taken together with all the other circumstances, results in a gross disparity that is extraordinary and compelling. And I think that is a way to read all of the statutes and the commission's actions in harmony and not in conflict. Thank you. Can I ask you one question just about sort of future prospects? I assume these issues are eventually going to go to the Supreme Court, but there are two tracks of cases. There's one case where they're sort of controlled by pre-commission, determined like maybe this case, and there's some cases where maybe circuits are picking up issues where maybe they didn't have something on record before the commission acted, so maybe they're looking at it under a slightly different standard, as you're urging or you're asking us to revisit. But is there any vehicle issue for, you know, is our case going to not be a good vehicle for the court, because if we went against you, for example, because we had this prior existing precedent, or is there anything? I'm just sort of thinking, I assume this is all going to go to the court, but there's, like I said, there's these two tracks of cases because sometimes we're interpreting prior decisions. Sometimes we're, some circuits we'll be looking at won't have a prior decision, especially an en banc decision like we do. I think that the question before the court will be without regard to what previous, what courts have previously done. I think they will be writing on the same clean slate that I was describing because they're not bound by any previous interpretation of these statutes. And so I think the question the court will ask itself is the one that I was suggesting this court should ask itself, which is, is this within the very broad bounds of extraordinary and compelling? And did the agency that Congress specifically instructed to give those words meaning, did they act within those bounds without regard to what courts have previously done? If the Supreme Court says that, then that effectively overrules McCall. I suppose unless the court were then to agree that, if the court were then to conclude that the commission acted outside its authority. We're assuming the commission acted within its authority. Yes. Probably. Well, anyway, that's very helpful. Thanks. Thanks. Thank you. I'd actually first like to start with Judge Bachelet's question about an unusually long sentence. And tracing back a little bit, the original, the amicus brief filed in Bricker lays this out. The original proposal from the Sentencing Commission was that courts could reduce the sentence any time a current sentence was inequitable in light of a change in the law. And in response to several comments, including from the Department of Justice, they then narrowed the criteria. And one of the criteria, obviously, is now unusually long sentence. There are questions out there, obviously, about what that means. Only a few cases have percolated through. If we didn't have those questions, none of us would have a job.  And that actually, Judge Bachelet, was going to be my next point, which is that, of course, will be subject to appellate review, and that will be defined as we go forward. But two additional points. One, I don't believe that affects the validity of the policy statement, although I don't take your question to be regarding that. And second, I would just offer that unusually long could mean, as one, the court could accept it in an appropriate case, regarding the offense, regarding the current standards about what it is an appropriate sentence for such an offense, that also could take into account then current standards about what is long compared to what a person is serving today. But again, that's not presented in Mr. McHenry's case. The government hasn't contested that his sentence is not qualified and it's unusually long, and the district court found that. One additional point with as many subpoints as the time allows me to address. But my colleague on the other side brought up Labonte and Neal. I do want to just address. Those are not express delegation cases, and that's an important distinction, particularly in Neal, because that's true. The Supreme Court weighed in and said the statute means this, not in express delegation context. But in Neal, the commission had issued a different guideline, and the Supreme Court said, well, we're not actually saying the guideline is wrong, and we don't necessarily read the guideline as saying that the statute means this. They left the guideline to stand. That actually, I think, supports our position that here we have a policy statement that we, again, believe is authorized by the statute, but the court there was weighing in on what the statute meant separate from any policy statement. That just wasn't the question that the court said it was answering. And then my colleague also brought up a few things that I do want to address about the scope of an express delegation. Reading, for example, 3582C2 as an implicit restriction on changes of law in 3582C1. So, first of all, 994T has one restriction, and it's not that. But also, 3582C2 allows even ordinary changes, then, to be retroactive, should the commission weigh in on that. It gives a mechanism for the commission to say even a six-month change, even a three-month change, we can address that. And, in fact, I know the court has addressed that with the recent 821 amendment cases. So we don't believe that that weighs against the position here in defining what an extraordinary and compelling reason is. I see my time is up. Thank you for your attention. Thank you. May it please the Court. Getting right to the heart of McCall, I would also point this court to Braxton, a case in which the government relies. There, the Supreme Court held that the commission could eliminate circuit splits over the interpretation of its guidelines. And the reason is critical. The Supreme Court said that Congress had expressly delegated authority in 994 to the commission to amend its guidelines and make those amendments retroactive. And the Supreme Court said that that explicit power showed that Congress contemplated that the commission could eliminate circuit splits over its guidelines. 994T is exactly the same way. It demonstrates that Congress contemplated when it enacted the Sentencing Reform Act that when courts disagreed over the capacious phrase extraordinary and compelling, the commission could step in and eliminate that circuit conflict by promulgating a binding policy statement as it did in B6. As to the policy statement's validity, I didn't hear the government identify any text in either the Sentencing Reform Act or the First Step Act that forecloses the policy choices the commission made in B6, specifically the totality of the circumstances approach that B6 reflects. And I would point this court to B2 of the policy statement, which permits a court to find extraordinary and compelling circumstances based on a combination of age, health, and time served. Each of those factors in isolation is unquestionably ordinary. Everyone gets old. Everyone gets sick. As McCall remarks, there's nothing unusual about serving the majority of your sentence. And yet no one, including the government, disputes that those factors can combine to give rise to extraordinary and compelling circumstances. B2 has been on the books for many years. The government has never challenged it. Well, B6 works exactly the same way. It permits a court to look at, in a narrow set of circumstances, a change in law alongside a defendant's other individual circumstances in conducting the extraordinary and compelling analysis. Finally, I just want to turn to the role of Congress here, because I think that's critical. And the government has invoked Congress in pending legislation. As a threshold matter, we think it's inappropriate for this court to be mind-reading Congress. The only indication of Congress's intent is the statutory text that Congress enacted in 1984. And again, nothing in the language of the Sentencing Reform Act speaks to this issue. But I think it's notable that the commission, consistent with longstanding practice, sent its policy statement to the Hill, where it was there all summer. Congress did not reject B6 as it could have done. And so to the extent that we're going to look at congressional silence for meaning, I think you need to consider that, that Congress had its shot to reject B6, and it didn't. Ultimately, adopting the government's arguments and invalidating the policy statement is going to create a permanent circuit split. This court should reject the government's arguments and reverse. Thank you. We thank you all for really good help on a very complex case and of statutory interpretation of congressional intent. Your briefs were helpful. Your arguments were extremely helpful. It will take some time, but we will take it under advisement, and an opinion will be issued in due course.